**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Gustafson,<br><br>            Plaintiff,<br><br>v.<br><br>Goodman Manufacturing Company LP, et al.,<br><br>            Defendants. | No. CV-13-08274-PCT-JAT<br><br>**ORDER** |

Pending before the Court are four motions to seal: (1) a Joint Motion and Memorandum of Law in Support of Sealing Portions of Plaintiff's Motion for Class Certification and Supporting Evidence (Doc. 77); (2) Defendants' Motion to File under Seal: (A) Portions of Defendants' Opposition to Plaintiff's Motion for Class Certification and Memorandum in Support, and Portions of Certain Exhibits Thereto, and (B) Portions of Defendants' Motion to Exclude Certain Opinions of Paul J. Sikorsky and Memorandum in Support (Doc. 86); (3) a Joint Motion and Memorandum of Law in Support of Sealing Portions of the Supplemental Declaration of Paul J. Sikorsky in Support of Plaintiff's Motion for Class Certification (Doc. 93); and (4) a Joint Motion and Memorandum of Law in Support of Sealing (A) Portions of Plaintiff's Reply in Support of Motion for Class Certification, and (B) Certain Exhibits Thereto (Doc. 106). The Court now rules on the motions.

**I.    Legal Standard**

It has long been recognized that the public has a general right of access "to inspect

1
2
3
4
5
6
7
8 and copy . . . judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). This right of access extends to all judicial records except those that have "traditionally been kept secret for important policy reasons," namely grand jury transcripts and certain warrant materials. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Nevertheless, "the common-law right of inspection has bowed before the power of a court to insure that its records" do not "serve as . . . sources of business information that might harm the litigant's competitive standing." *Nixon*, 435 U.S. at 598.

9
10
11
12
13
14 "Unless a particular court record is one traditionally kept secret, a strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotation omitted). A party seeking to seal a judicial record bears the burden of overcoming this presumption by either meeting the "compelling reasons" standard if the record is a dispositive pleading, or the "good cause" standard if the record is a non-dispositive pleading. *Id.* at 1180.[1]

15

---

16
17
18
19
20
21
22
23 [1] In a recent opinion, a panel of the Ninth Circuit shifted from the dispositive/non-dispositive analysis to a review of the relationship between the underlying motion and the merits of the case. *See Ctr. for Auto Safety v. Chrysler Grp, LLC*, No. 15-55084, 2016 WL 142440, at *6 (9th Cir. Jan. 11, 2016) ("*Auto Safety*"). Specifically, *Auto Safety* held that public access to records attached to a motion that is "more than tangentially related to the merits of a case" will be reviewed under the "compelling interest" standard, while documents attached to a motion that does not have a "tangential" relationship to the merits of a case may be sealed if "good cause" is shown. *Id.* However, because *Auto Safety* was only a panel decision and not *en banc*, prior Ninth Circuit precedent centralizing the inquiry on whether the record is dispositive or non-dispositive was not overruled. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). Circuit Judge Sandra S. Ikuta stated as much in her Dissent:

24
25
26
27
28 > According to the majority, the district court here erred because it "relied on language in our cases which provides that when a party is attempting to keep records attached to a 'non-dispositive' motion under seal, it need only show 'good cause.'" Maj. op. at 5. This comes as a surprise, because the "language in our cases" constitutes binding precedent. But no matter, the majority invents a new rule, namely that a party cannot keep records under seal if they are attached to any motion that is "more than tangentially related to the merits of a case," Maj. op. at 17, unless the party can meet the

1  What constitutes a "compelling reason" is "best left to the sound discretion of the trial court." *Nixon*, 435 U.S. at 599. The Court must "balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Kamakana*, 447 F.3d at 1179. If the Court decides to seal certain judicial records after considering these interests, "it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to . . . release trade secrets." *Id.* (quoting *Nixon*, 435 U.S. at 598).

A "trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569–70 (9th Cir. 2008) (quoting Restatement (First) of Torts § 757, cmt. B (1939)). Notably, as this Court has observed in the past, "because confidentiality alone does not transform business information into a trade secret, a party alleging trade secret protection as a basis for sealing court records must show that the business information is in fact a trade secret." *PCT Int'l Inc. v. Holland Elecs. LLC*, 2014 WL 4722326, at *2 (D. Ariz. Sept. 23, 2014) (quotation omitted).

The less-stringent "good cause" standard requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002) (quotation omitted); *see* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" is not enough. *Beckman Indus., Inc. v. Int'l*

---

"stringent standard" of showing that compelling reasons support secrecy, Maj. op. at 8. Because this decision overrules circuit precedent and vitiates Rule 26(c) of the Federal Rules of Civil Procedure, I strongly dissent.

*Auto Safety*, 2016 WL 142440, at *9. Whether *Auto Safety* will be reheard by the Ninth Circuit *en banc* is unknown as of the date of this Order.

1 *Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

2 Here, the pending motions to seal concern documents associated with Plaintiff's 3 motion for class certification. Although the Ninth Circuit has not spoken on the issue of 4 whether a motion for class certification is a dispositive or non-dispositive pleading, this 5 Court has applied the "good cause" standard to the sealing of documents filed with a 6 motion for conditional certification, see *Hart v. U.S. Bank, N.A.*, 2013 WL 5965637, at 7 *8–9 (D. Ariz. Nov. 8, 2013), and other courts in this circuit have applied the "good 8 cause" standard to documents concomitant to class certification motions, see *In re High-*9 *Tech Emp. Antitrust Litig.*, 2013 WL 5486230 (N.D. Cal. Sept. 30, 2013); *In re NCAA* 10 *Student-Athlete Name & Likeness Licensing Litig.*, 2013 WL 1997252 (N.D. Cal. May 11 13, 2013; *Nygren v. Hewlett-Packard Co.*, 2010 WL 2107434 (N.D. Cal. May 25, 2010). 12 As noted, however, a panel of the Ninth Circuit recently muddied the waters regarding 13 the standards applicable to a motion to seal. On one hand, if the Court were to follow the 14 *Auto Safety* test, a motion for class certification likely involves issues that are "more than 15 tangentially related to the merits of the case," thereby invoking the "compelling reasons" 16 standard. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (noting 17 that courts must "consider evidence which goes to the requirements of Rule 23 [at the 18 class certification stage] even [if] the evidence may also relate to the underlying merits of 19 the case"). On the other hand, if the Court were to apply the traditional dispositive/non-20 dispositive approach, the "good cause" standard would likely apply. *See, e.g.*, *In re High-*21 *Tech Emp. Antitrust Litig.*, 2013 WL 5486230, at *2 n.1. Nonetheless, the Court finds 22 that deciding which standard applies in this case is inconsequential because the same 23 records would be sealed under either standard.

24 **II.     Analysis**

25 Goodman seeks to seal three categories of information: (1) warranty claim rate 26 information for Goodman evaporator coils, (2) the design and manufacturing processes 27 used by Goodman to produce evaporator coils, and (3) pricing details related to payments 28 made by Goodman for replacements of evaporator coils. *See* (Docs. 77, 86, 93, 106). The

- 4 -

Court will analyze each in turn.

### A. Warranty Claim Rate for Goodman Evaporator Coils

A residential air conditioner includes three integrated components: (1) an evaporator coil, (2) a condenser coil, and (3) a compressor. Goodman argues that all documents containing the warranty claim rate and related information for its evaporator coil product should be sealed because disclosing such data "would unfairly equip competitors with information to attempt to dissuade distributors and dealers from selling Goodman products." (Doc. 77 at 2). According to Goodman, publicizing this information would "unfairly disadvantage Goodman and allow a competitor to attempt to use that information to the competitor's commercial advantage." (*Id.*) Goodman highlights the fact that it keeps its warranty claim rate data strictly confidential and limits access only to those people who "need to know." (*Id.*) Goodman also comments that two other district courts permitted Goodman to file its warranty claim rate information under seal. (*Id.* (citing *McVicar v. Goodman Global, Inc.*, No. SA CV 13-1223-DOC(RNBx) (C.D. Cal.); *Kotsur v. Goodman Global, Inc., et al.*, No. 14-CV-1147-NS (E.D. Pa.))).[2]

The Court agrees with *Kotsur* and *McVicar* that the warranty claim rate for Goodman evaporator coils satisfies the "good cause" standard and also concludes that "compelling reasons" exist to seal the claim rates. In Goodman's industry, warranty claim rates are deemed classified commercial information that are kept strictly confidential from competitors. Accordingly, Goodman maintains its rates in a highly securitized manner.

For this reason, the Court will permit Goodman to file under seal documents that reflect Goodman's *actual* warranty claim rate and data that could be manipulated to ascertain that rate. Many of Goodman's proposed redactions, however, are far too broad. For manufacturing companies that offer a warranty program, warranty claims are a business reality. Simply because a document addresses warranty claims in nonspecific

---

[2] Both of these courts applied the "good cause" standard when determining whether the documents should be filed under seal.

- 5 -

terms or recounts some generic feature of a warranty claim (i.e., the length of time between date of purchase and the claim or the fact that the claim rate increases or decreases over time) does not warrant sealing the document from the public. As Goodman quotes from a congressional agency finding, "the public availability of *detailed, comprehensive* warranty data . . . will provide significant market intelligence to competitors." (Doc. 77 at 7 (citing Confidential Business Information, 72 Fed. Reg. 59,434, 59,455 (Oct. 19, 2007))) (emphasis added). Rather than "detailed" and "comprehensive," much of the data Goodman seeks to seal is vague and piecemeal.

Consequently, the Court concludes that several of Goodman's proposed redactions under the guise of "warranty claim rate information" do not justify sealing under either the "good cause" or "compelling reasons" standard and ORDERS as follows:

| Docket No. in Support of Sealing | Document | Section[3] | The Court's Ruling[4] |
|---|---|---|---|
| 77 | Plaintiff's Motion for Class Certification and Memorandum of Points and Authorities (Docs. 78, 81) | Page 18, lines 26–27 | **GRANTED**. The warranty claim rate and data that could be manipulated to determine the warranty claim rate for Goodman evaporator coils should be kept under seal. If the information as expressed in this document was made public, Goodman's competitive standing could be unfairly prejudiced. |
| 77 | Declaration of Paul J. Sikorsky (Doc. 80) | ¶ 19; ¶ 22, sentence no. 2; Exhibit E | **GRANTED**. The warranty claim rate and data that could be manipulated to determine the warranty claim rate for Goodman evaporator coils should be kept |

---

[3] Citations are to the sections of the documents as set forth in the motions to seal.

[4] Rather than strike the redacted versions of the documents currently on the docket, the Court will order the parties to file a Notice of Compliance appended by versions of the documents at issue that are redacted in accordance with this Order.

| | | | |
|---|---|---|---|
| | | | under seal. If the information as expressed in this document was made public, Goodman's competitive standing could be unfairly prejudiced. |
| 77 | Declaration of Paul J. Sikorsky (Doc. 80) | ¶ 18, last sentence[5]; ¶ 20; ¶ 21; ¶ 23, sentence nos. 1 and 2 | **DENIED**. The fact that this testimony innocuously refers to the existence of warranty claims—without expressing the actual rate or data that could be manipulated to determine the actual rate—is not enough to merit sealing the information from the public eye under either the "good cause" or "compelling reasons" standard. |
| 77 | Tostrud Exhibit D (Stephen Griffin Deposition) (Doc. 82) | 119:1–7; 119:19–120:11 | **GRANTED**. This testimony reflects Goodman's internal analysis of warranty claims. Specifically, it reviews a document that analyzes claims reporting a leak based on the year of manufacture. Disclosure of this data could unfairly prejudice Goodman's competitive standing. |
| 77 | Tostrud Exhibit D (Stephen Griffin Deposition) (Doc. 82) | 117:12–14; 117:24–118:25; 119:8–18; 120:12–24 | **DENIED**. The fact that this testimony innocuously refers to the existence of warranty claims or "leak counts"—without expressing the actual rate or data that could be manipulated to determine the actual rate—is not enough to merit sealing the information from the public eye under either the "good cause" or "compelling reasons" standard. |
| 77 | Tostrud | Entirety | **GRANTED**. This testimony reflects |

---

[5] Goodman cites to and discloses the essence of this sentence in its Opposition to Plaintiff's Motion for Class Certification and Memorandum in Support but does not seek to seal that portion of its Opposition. *See* (Doc. 85 at 7). As this information has been made available for public review, sealing it would serve no purpose. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 n.11 (2d Cir. 2004) (noting that "[o]nce [information] is public, it necessarily remains public" and further stating that "[o]nce the cat is out of the bag, the ball game is over" (quotation omitted)).

- 7 -

| | | | |
|---|---|---|---|
| | Exhibit Q (Doc. 82) | | Goodman's internal analysis of warranty claims. Specifically, it reviews a document that analyzes claims reporting a leak based on the year of manufacture. Disclosure of this data could unfairly prejudice Goodman's competitive standing. |
| 86 | Defendants' Opposition to Plaintiff's Motion for Class Certification and Memorandum in Support (Doc. 85) | Page 2, line 8; Page 6, line 21; Page 14, line 28; Page 16, line 13; Page 22, line 17; Page 29, line 27; Page 35, line 2 | **GRANTED**. The warranty claim rate and data that could be manipulated to determine the warranty claim rate for Goodman evaporator coils should be kept under seal. If the information as expressed in this document was made public, Goodman's competitive standing could be unfairly prejudiced. |
| 86 | Defendants' Opposition to Plaintiff's Motion for Class Certification and Memorandum in Support (Doc. 85) | Page 8, lines 1–2; Page 12, line 22; Page 13, lines 14–28 | **DENIED**. The fact that a document innocuously refers to the existence of warranty claims—without expressing the actual rate or information that could be manipulated to determine the actual rate—is not enough to merit sealing the information from the public eye under either the "good cause" or "compelling reasons" standard. |
| 86 | Exhibit B to Defendants' Opposition to Plaintiff's Motion to Class Certification, Declaration of Marshall Blackham (Doc. 85) | Portions of ¶¶ 20, 21 | **DENIED**. The fact that a document innocuously refers to the existence of warranty claims—without expressing the actual rate or information that could be manipulated to determine the actual rate—or to the percentage of coils that have an extended warranty, is not enough to merit sealing the information from the public eye under either the "good cause" or "compelling reasons" standard. |
| 86 | Exhibit E to Defendants' Opposition to Plaintiff's | Portions of ¶ 13; Footnote 3 | **GRANTED**. The warranty claim rate and data that could be manipulated to determine the warranty claim rate for Goodman |

| | | | |
|---|---|---|---|
| | Motion to Class Certification, Declaration of Dr. Itamar Simonson (Doc. 85) | | evaporator coils should be kept under seal. If the information as expressed in this document was made public, Goodman's competitive standing could be unfairly prejudiced. |
| 86 | Exhibit E to Defendants' Opposition to Plaintiff's Motion to Class Certification, Declaration of Dr. Itamar Simonson (Doc. 85) | Portions of ¶ 34 | **DENIED**. The fact that this testimony innocuously refers to the existence of warranty claims—without expressing the actual rate or information that could be manipulated to determine the actual rate—is not enough to merit sealing the information from the public eye under either the "good cause" or "compelling reasons" standard. |
| 86 | Exhibit F to Defendants' Opposition to Plaintiff's Motion to Class Certification, Deposition of Paul J. Sikorsky (Doc. 85) | 11:16–17; 11:21–22; 14:2; 36:4–5; 53:5–54:14; 55:6–10 | **GRANTED**. The warranty claim rate and data that could be manipulated to determine the warranty claim rate for Goodman evaporator coils should be kept under seal. If the information as expressed in this document was made public, Goodman's competitive standing could be unfairly prejudiced. |
| 86 | Exhibit F to Defendants' Opposition to Plaintiff's Motion to Class Certification, Deposition of Paul J. Sikorsky (Doc. 85) | 54:17–55:2; 55:11–15 | **DENIED**. The fact that this testimony innocuously refers to the existence of warranty claims—without expressing the actual rate or information that could be manipulated to determine the actual rate—is not enough to merit sealing the information from the public eye under either the "good cause" or "compelling reasons" standard. |
| 86 | Exhibit G to Defendants' Opposition to Plaintiff's Motion to Class Certification, Declaration of | Portions of ¶¶ 27, 28, 29 | **DENIED**. The fact that this testimony innocuously refers to the existence of warranty claims—without expressing the actual rate or information that could be manipulated to determine the actual rate—is not enough to merit sealing |

| | | | |
|---|---|---|---|
| | Michael E. Stevenson, Ph.D, P.E. (Doc. 85) | | the information from the public eye under either the "good cause" or "compelling reasons" standard. |
| 86 | Exhibit K to Defendants' Opposition to Plaintiff's Motion to Class Certification, Declaration of William E. Wecker, Ph.D (Doc. 85) | Portions of ¶¶ 9, 10; ¶ 11; Footnotes 5, 6; Exhibits 2–5 | **DENIED**. While this testimony explains trends in the warranty claim rates for Goodman's evaporator coil product it does not disclose the actual rates. The fact that this testimony innocuously refers to the existence of warranty claims—without expressing the actual rate or information that could be manipulated to determine the actual rate—is not enough to merit sealing the information from the public eye under either the "good cause" or "compelling reasons" standard. |
| 86 | Defendants' Motion to Exclude Certain Opinions of Paul J. Sikorsky (Doc. 84) | Page 17, line 3; Page 17, line 24 | **GRANTED**. The warranty claim rate and data that could be manipulated to determine the warranty claim rate for Goodman evaporator coils should be kept under seal. If the information as expressed in this document was made public, Goodman's competitive standing could be unfairly prejudiced. |
| 86 | Defendants' Motion to Exclude Certain Opinions of Paul J. Sikorsky (Doc. 84) | Page 11, line 4 | **DENIED**. The fact that a document innocuously refers to the existence of warranty claims—without expressing the actual rate or information that could be manipulated to determine the actual rate—is not enough to merit sealing the information from the public eye under either the "good cause" or "compelling reasons" standard. |
| 93 | Supplemental Declaration of Paul J. Sikorsky in Support of | ¶¶ 5, 7, 8; Exhibit A | **GRANTED**. The warranty claim rate and data that could be manipulated to determine the warranty claim rate for Goodman |

- 10 -

| | | | |
|---|---|---|---|
| | Plaintiff's Motion for Class Certification (Doc. 92) | | evaporator coils should be kept under seal. If the information as expressed in this document was made public, Goodman's competitive standing could be unfairly prejudiced. |
| 93 | Supplemental Declaration of Paul J. Sikorsky in Support of Plaintiff's Motion for Class Certification (Doc. 92) | ¶ 10 | **DENIED**. The fact that a document innocuously refers to the existence of warranty claims—without expressing the actual rate or information that could be manipulated to determine the actual rate—is not enough to merit sealing the information from the public eye under either the "good cause" or "compelling reasons" standard. |
| 106 | Plaintiff's Reply in Support of Motion for Class Certification (Doc. 107) | Page 3, lines 5–8; Page 3, lines 11–12; Page 3, lines 14–15; Page 3, lines 18–21; Page 4, lines 1–4; Page 4, lines 14–16; Page 4, line 19; Page 4, line 22; Page 4, line 24; Page 4, line 27– Page 5, line 5; Page 5, line 25– page 6, line 1 | **DENIED**. The fact that Plaintiff's reply brief innocuously refers to the existence of warranty claims—without expressing the actual rate or information that could be manipulated to determine the actual rate—is not enough to merit sealing the information from the public eye under either the "good cause" or "compelling reasons" standard. |
| 106 | Exhibit F to Plaintiff's Reply in Support of Motion for Class Certification (Doc. 108) | The following sections: (1) "Estimated Exposure," (2) "Assessment Notes/Special Notes relative to information above," and (3) "Project Details" | **GRANTED**. These portions of the document display pricing information that, if disclosed, could unfairly prejudice Goodman's competitive standing. |
| 106 | Exhibit F to Plaintiff's Reply in Support of | All else | **DENIED**. The remainder of this document does not contain information that, by either "good |

| | | | |
|---|---|---|---|
| | Motion for Class Certification (Doc. 108) | | cause" or "compelling reasons," overcomes the public's presumed access to court records. |
| 106 | Exhibit G to Plaintiff's Reply in Support of Motion for Class Certification (Doc. 108) | The following sections: (1) "Estimated Exposure," (2) "Business Justification," and (3) User Joe McAbee's 11/30/2010 Log | **GRANTED**. These portions of the document display pricing information that, if disclosed, could unfairly prejudice Goodman's competitive standing. |
| 106 | Exhibit G to Plaintiff's Reply in Support of Motion for Class Certification (Doc. 108) | All else | **DENIED**. The remainder of this document does not contain information that, by either "good cause" or "compelling reasons," overcomes the public's presumed access to court records. |
| 106 | Exhibit I to Plaintiff's Reply in Support of Motion for Class Certification (Doc. 108) | All "Action" sections | **GRANTED**. The "Action" sections of the document describe internal testing techniques of Goodman evaporator coils that, if disclosed, could give competitors of Goodman an unfair competitive advantage. |
| 106 | Exhibit I to Plaintiff's Reply in Support of Motion for Class Certification (Doc. 108) | All else | **DENIED**. The remainder of this document does not contain any information that could be deemed a trade secret or that would unfairly prejudice Goodman if disclosed. |
| 106 | Exhibit J to Plaintiff's Reply in Support of Motion for Class Certification (Doc. 108) | First paragraph of Wednesday, July 23, 2003 8:19 AM e-mail from Steve Griffin that begins with "Here is the report . . ." and ending with ". . . Apartments)." | **GRANTED**. This portion of the document includes a warranty claim value for a specific customer, the disclosure of which could unfairly prejudice Goodman's competitive standing. |
| 106 | Exhibit J to Plaintiff's Reply in Support of Motion for Class | All else | **DENIED**. The remainder of this document does not discuss warranty claim rates and only references one dealer's interactions with Goodman. |

| | | | |
|---|---|---|---|
| | Certification (Doc. 108) | | The information in this document does not satisfy the "good cause" or "compelling reasons" standards to be sealed from the public eye. |
| 106 | Exhibit L to Plaintiff's Reply in Support of Motion for Class Certification (Doc. 108) | Entirety | **DENIED**. This document does not reference an actual warranty claim rate, but concerns a design modification that was implemented years ago and impact projections of that modification. Because Goodman physically modified a product that entered the market, the changes are already subject to public scrutiny. Consequently, documents evincing the changes do not meet either the "good cause" or "compelling reasons" standard to merit sealing. |
| 106 | Exhibit N to Plaintiff's Reply in Support of Motion for Class Certification (Doc. 108) | "Estimated Exposure" section | **GRANTED**. This portion of the document displays pricing information that, if disclosed, could unfairly prejudice Goodman's competitive standing. |
| 106 | Exhibit N to Plaintiff's Reply in Support of Motion for Class Certification (Doc. 108) | All else | **DENIED**. The remainder of this document does not contain information that overcomes the public's presumed access to court records by either "good cause" or "compelling reasons." |
| 106 | Exhibit O to Plaintiff's Reply in Support of Motion for Class Certification (Doc. 108) | "Estimated Exposure" section | **GRANTED**. This portion of the document displays pricing information that, if disclosed, could unfairly prejudice Goodman's competitive standing. |
| 106 | Exhibit O to Plaintiff's Reply in Support of Motion for Class Certification (Doc. 108) | All else | **DENIED**. The remainder of this document does not contain information that overcomes the public's presumed access to court records by either "good cause" or "compelling reasons." |
| 106 | Exhibit P to | Entirety | **DENIED**. This document does not |

| | | | |
|---|---|---|---|
| | Plaintiff's Reply in Support of Motion for Class Certification (Doc. 108) | | contain information that overcomes the public's presumed access to court records by either "good cause" or "compelling reasons." |
| 106 | Exhibit Q to Plaintiff's Reply in Support of Motion for Class Certification (Doc. 108) | Entirety | **DENIED**. This document does not contain information that overcomes the public's presumed access to court records by either "good cause" or "compelling reasons." The warranty claim rate is not disclosed nor is data that could be manipulated to determine the warranty claim rate. |

### B. Goodman's Design and Manufacturing Processes

Goodman hopes to seal all information related to its "design and manufacturing processes, including what Goodman ultimately did and did not elect to implement." (Doc. 77 at 3). Like before, the Court agrees that—in general—material of this type may satisfy both the "good cause" and "compelling interest" standards. As Goodman observes, certain design and manufacturing processes entail "substantial cost" and are developed only through "substantial effort spanning multiple years." (*Id.* at 10). Thus, disclosing the details of particular design and manufacturing processes could unfairly equip Goodman's competitors with the opportunity to mimic the processes without the time and cost of development through trial and error.

Again, however, many of Goodman's proposed redactions do not fall into the bucket of design and manufacturing processes such that the information should be sealed from the public. For example, Goodman has not shown that "specific prejudice or harm" would result from disclosing its Engineering Change Request ("ECR") notification process. *See Phillips*, 307 F.3d at 1210–11. Nor is there any protectable interest in ECR documents describing physical alterations to Goodman products that have been in the market for years. *See* Restatement (First) of Torts § 757, cmt. b (1939) ("Matters which are completely disclosed by the goods which one markets cannot be his secret."). Finally, "[t]he mere fact that the production of records may lead to a litigant's embarrassment,

incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179 (citing *Foltz*, 331 F.3d at 1136).

For these reasons, the Court ORDERS as follows:

| Docket No. in Support of Sealing | Document | Section[6] | The Court's Ruling |
|---|---|---|---|
| 77 | Declaration of Paul J. Sikorsky (Doc. 80) | ¶ 32; ¶ 33, sentence nos. 1 and 2 | **GRANTED**. This testimony describes confidential manufacturing processes the disclosure of which could unfairly prejudice Goodman's competitive standing. |
| 77 | Declaration of Paul J. Sikorsky (Doc. 80) | ¶¶ 29, 34, 35 | **DENIED**. This testimony concerns design modifications that were implemented years ago. Because Goodman physically modified a product that has entered the market, the changes are already subject to public scrutiny. Consequently, sealing documents evincing the changes does not meet either the "good cause" or "compelling reasons" standard. |
| 77 | Tostrud Exhibit A (Peter Alexander Deposition) (Doc. 82) | 124:5–23; 126:5–25; 132:1–12; 132:21–133:7; 133:12–135:24; 136:7–138:18; 139:14–24; 140:12–142:10; 142:19–144:25; 156:1–5; 156:14–157:10; 157:17–19 | **DENIED**. Much of this testimony pertains to a self-described "marketing" scheme that, based on the records, did not entail "substantial cost" or "substantial effort spanning multiple years" to develop. Moreover, the design changes in this testimony were implemented in products that have been on the market for years. Finally, the gist of one of the design changes was publicly disclosed in Exhibit E to Jon A. Tostrud's Declaration, *see* |

---

[6] Citations are to the sections of the documents as set forth in the motions to seal.

| | | | |
|---|---|---|---|
| | | | (Doc. 82-1 at 136), while another was publicly disclosed in Paul J. Sikorsky's testimony, *see* (Doc. 80 at 12–13). |
| 77 | Tostrud Exhibit D (Stephen Griffin Deposition) (Doc. 82) | 68:17–21; 105:22–106:5; 182:22–183:3 | **DENIED**. This testimony does not concern trade secret information about Goodman's manufacturing or design processes. Nor does Goodman present "good cause" or a "compelling reason" to overcome the presumption of public access to this record. |
| 77 | Tostrud Exhibit E (Marshall Blackham Deposition) (Doc. 82) | 189:16–191:21; 193:1–6; 194:4–14; 194:18–195:24 | **DENIED**. Much of this testimony pertains to a self-described "marketing" scheme that, based on the records, did not entail "substantial cost" or "substantial effort spanning multiple years" to develop. Moreover, the design changes in this testimony were implemented in products that have been on the market for years. Finally, the gist of one of the design changes was publicly disclosed in Exhibit E to Jon A. Tostrud's Declaration. *See* (Doc. 82-1 at 136). |
| 77 | Tostrud Exhibit F (Doc. 82) | First paragraph of Wednesday, July 23, 2003 8:19 AM e-mail from Steve Griffin that begins with "Here is the report . . . ." and ending with ". . . Apartments)." | **GRANTED**. This portion of the document includes a warranty claim value for a specific customer, the disclosure of which could unfairly prejudice Goodman's competitive standing. |
| 77 | Tostrud Exhibit F (Doc. 82) | All else | **DENIED**. The remainder of this document does not reference information that must be sealed from the public. |
| 77 | Tostrud Exhibit I (Doc. 82) | Entirety | **GRANTED**. This document contains information regarding Goodman's product development |

| | | | |
|---|---|---|---|
| | | | that, if disclosed, could give competitors of Goodman an unfair commercial advantage. |
| 77 | Tostrud Exhibit O (Doc. 82) | Entirety | **DENIED**. This document concerns a design modification that was implemented years ago. Because Goodman physically modified a product that has entered the market, the changes are already subject to public scrutiny. Documents evincing the changes therefore do not satisfy either the "good cause" or "compelling reasons" standard. Finally, this design change was publicly disclosed in Paul J. Sikorsky's testimony. *See* (Doc. 80 at 12–13). |
| 77 | Tostrud Exhibit P (Doc. 82) | Entirety | **DENIED**. This document concerns a design modification that was implemented years ago. Because Goodman physically modified a product that has entered the market, the changes are already subject to public scrutiny. Documents evincing the changes therefore do not satisfy either the "good cause" or "compelling reasons" standard. Finally, this design change was publicly disclosed in Paul J. Sikorsky's testimony. *See* (Doc. 80 at 12–13). |
| 77 | Tostrud Exhibit R (Doc. 82) | Entirety | **DENIED**. This document does not describe a Goodman manufacturing or design process that warrants sealing under either the "good cause" or "compelling interests" standard. |
| 77 | Tostrud Exhibit S (Doc. 82) | Entirety | **DENIED**. This document concerns a design modification that was implemented years ago. Because Goodman physically modified a product that has entered the market, the changes are |

| | | | |
|---|---|---|---|
| | | | already subject to public scrutiny. Consequently, documents evincing the changes do not satisfy either the "good cause" or "compelling reasons" standard. |
| 77 | Tostrud Exhibit T (Doc. 82) | Entirety | **DENIED**. This document concerns a design modification that was implemented years ago. Because Goodman physically modified a product that has entered the market, the changes are already subject to public scrutiny. Consequently, documents evincing the changes do not satisfy either the "good cause" or "compelling reasons" standard. |
| 106 | Plaintiff's Reply in Support of Motion for Class Certification (Doc. 107) | Page 3, lines 22–23; Page 3, lines 27–28 | **DENIED**. These portions of Plaintiff's reply relate to design modifications that were implemented years ago. Because Goodman physically modified a product that has since entered the market, the changes are already subject to public scrutiny. Consequently, documents evincing the changes do not satisfy either the "good cause" or "compelling reasons" standard. |
| 106 | Exhibit C to Plaintiff's Reply in Support of Motion for Class Certification (Doc. 108) | Paragraph 3 of Tuesday, November 17, 2009, 8:36 AM e-mail from Neel Gupte, beginning with "George, Vinny is working on . . . ." and ending with ". . . but it has been done." | **GRANTED**. This paragraph discusses confidential design information the disclosure of which could give competitors of Goodman and unfair competitive advantage. |
| 106 | Exhibit C to Plaintiff's Reply in Support of Motion for Class Certification | All else | **DENIED**. The remainder of this document concerns a design modification that was implemented years ago. Because Goodman physically modified a |

| | | | |
|---|---|---|---|
| | (Doc. 108) | | product that has since entered the market, the changes are already subject to public scrutiny. Consequently, documents evincing the changes do not satisfy either the "good cause" or "compelling reasons" standard. |
| 106 | Exhibit K to Plaintiff's Reply in Support of Motion for Class Certification (Doc. 108) | Entirety | **GRANTED**. This document reflects confidential information regarding internal analyses of products and materials used in manufacturing Goodman products. If disclosed, this document could give competitors of Goodman an unfair commercial advantage. |
| 106 | Exhibit M to Plaintiff's Reply in Support of Motion for Class Certification (Doc. 108) | Entirety | **DENIED**. This document concerns a design modification that was implemented years ago. Because Goodman physically modified a product that has since entered the market, the changes are already subject to public scrutiny. Consequently, documents evincing the changes do not satisfy either the "good cause" or "compelling reasons" standard. |

### C.     Goodman's Pricing Information

Goodman also seeks to seal Exhibit H to Plaintiff's Reply in Support of Motion for Class Certification arguing that the document references confidential pricing information. (Doc. 106). The Court finds that the details contained in Exhibit H are sensitive information that justifies sealing. *See In re Elec. Arts, Inc.*, 298 F. App'x 568, 569–70 (9th Cir. 2008) (permitting a party to file under seal the pricing terms of a licensing agreement).

### III.   Conclusion

Accordingly,

**IT IS ORDERED** that the Joint Motion and Memorandum of Law in Support of Sealing Portions of Plaintiff's Motion for Class Certification and Supporting Evidence

1 (Doc. 77) is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

2 **IT IS FURTHER ORDERED** that Goodman's Motion to File under Seal: (1) Portions of Defendants' Opposition to Plaintiff's Motion for Class Certification and Memorandum in Support, and Portions of Certain Exhibits Thereto; and (2) Portions of Defendants' Motion to Exclude Certain Opinions of Paul J. Sikorsky and Memorandum in Support (Doc. 86) is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

**IT IS FURTHER ORDERED** that the Joint Motion and Memorandum of Law in Support of Sealing Portions of the Supplemental Declaration of Paul J. Sikorsky in Support of Plaintiff's Motion for Class Certification (Doc. 93) is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

**IT IS FURTHER ORDERED** that the Joint Motion and Memorandum of Law in Support of Sealing (1) Portions of Plaintiff's Reply in Support of Motion for Class Certification; and (2) Certain Exhibits Thereto (Doc. 106) is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

**IT IS FURTHER ORDERED** that the Clerk of Court shall file under seal the documents lodged at Docket Nos. 94, 100, 101, 109, and 110.

**IT IS FINALLY ORDERED** that by no later than ten (10) days from the date of this Order, the parties shall file a Notice of Compliance appended with versions of the documents at Docket Nos. 78, 80, 81, 82, 84, 85, 92, 107, and 108 that are redacted in accordance with this Order.

Dated this 1st day of February, 2016.

James A. Teilborg
Senior United States District Judge