**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Gustafson, | No. CV-13-08274-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Goodman Manufacturing Company LP, et al., | |
| Defendants. | |

Pending before the Court are three motions: (1) Plaintiff's Motion to Certify Class (Docs. 54, 78);[1] (2) Defendants' Motion to Exclude Certain Opinions of Paul J. Sikorsky and Memorandum in Support (Docs. 84, 115);[2] and (3) Defendants' Motion to Strike Supplemental Declaration of Paul J. Sikorsky in Further Support of Plaintiff's Motion For Class Certification (Doc. 96). The Court now rules on the motions.[3]

_____

[1] The Court ordered Plaintiff to file a redacted class certification motion for reasons unrelated to the motion's merits. *See* (Doc. 76). Plaintiff's original motion is filed at Docket No. 54 with a redacted version at Docket No. 78.

[2] Docket 115 is a sealed version of Defendants' original motion to exclude that is filed at Docket 84. The Clerk of Court sealed Defendants' motion to exclude pursuant to the Court's February 2, 2016 Order. *See* (Doc. 113).

[3] The motions for class certification, motion to exclude, and corresponding responses were subject to various motions to seal that the Court resolved on February 2, 2016. *See* (Doc. 113). In this Order, the Court will cite to the redacted versions of these documents that have been filed as attachments to the Notices of Compliance at Docket Nos. 119 and 120.

I.     **Background**

A.     **Factual Background**

Defendants Goodman Manufacturing Company, L.P. and Goodman Global, Inc. (collectively "Goodman") manufacture the principal components of air-conditioning systems, such as air conditioners and heat-pumps, under the Goodman and Amana brand names. (Doc. 120-2 at 12). Goodman does not market and sell its products directly to consumers but markets to contractors and sells to independent distributors across the country. (*Id.*)

According to the facts as alleged by Plaintiff, in or around March 2010, Plaintiff purchased two Goodman heat-pumps from Carey's Air Conditioning Heating & Plumbing ("Carey's"), a Goodman distributor, for approximately $16,500. (Doc. 79 at 2).[4] At that time, Plaintiff purchased an extended 10-year parts and labor warranty for his units. (*Id.*) Under the terms of the extended warranty, Plaintiff was not required to pay for any parts and labor costs associated with repairs of his heat-pumps. (*Id.*) Before he purchased the heat-pumps, Plaintiff alleges that he reviewed Goodman's official company website and learned of the high quality of Goodman's products. (*Id.*)[5]

---

[4] Although Plaintiff states in his pleadings and declaration that he purchased two "air-conditioners" from Carey's, when asked during his deposition whether Carey's bill of sale correctly represented that he purchased two "heat-pumps," Plaintiff confirmed the statement. (Doc. 85-5 at 5). Interestingly, during oral argument, Plaintiff's own attorney did not know whether Plaintiff purchased heat-pumps or air-conditioners.

While it appears the two air-conditioning system terms are sometimes used interchangeably, the Court will reference the Goodman devices that Plaintiff purchased as "heat-pumps" rather than "air conditioners"—a functional, though physically minute, distinction. As Plaintiff's expert explained, "[h]eat pumps used for household purposes have the same major components as central air conditioners except that they also contain a reversing valve that reverses the flow of refrigerant. Accordingly, a heat-pump is essentially a central air conditioning system capable of providing both cool and warm air." (Doc. 119-2 at 5).

[5] Conversely, Plaintiff also testified that he "didn't go online to check out the air-conditioners," "didn't review consumer comments about the air-conditioners," "didn't review Consumer Reports," and did not "do any research as to the air-conditioners

Plaintiff purportedly had numerous problems with his Goodman air conditioners throughout the next twenty-four months. (*Id.*) During this period, Plaintiff claims that he called Carey's more than a dozen times about various heating and cooling issues with his units. (*Id.*) In July 2011 and January 2012, Plaintiff submitted warranty claims on his units' condenser coils, which Goodman replaced without charge. (Doc. 119-5 at 14). In or around March 2013, after multiple on-site engagements, Carey's refused to service Plaintiff's units anymore because doing so was cost prohibitive. (Doc. 79 at 3).[6] It is undisputed that Carey's did not charge Plaintiff for the parts and labor costs associated with the repairs throughout this period. (*Id.*)

In or around March 2013, Plaintiff purchased a bi-annual maintenance agreement from River Valley Air Conditioning, Inc. ("River Valley") for $266.00. (*Id.*) The terms of this agreement are as follows:

> Central air conditioning equipment and furnaces are durable and dependable, but like all mechanical equipment they perform best when they are routinely serviced. Living in the desert area with its intense heat in the summer, our equipment takes a lot more abuse than equipment located in areas with cooler temperatures.
>
> With that in mind, *River Valley Air Conditioning, Inc.*, has a maintenance program that we would like you to consider putting into action. This program is set up to take care of the maintenance needs of your equipment and give you the added piece of mind that your system will be operational and able to withstand the extreme temperatures and abuse during the summer and winter months. The best time to have your equipment serviced is before the season get [sic] in full swing. We recommend that you service your equipment twice a year, once in the spring, and once in the fall. This service will give your system added equipment life and better operating efficiency.
>
> Once you sign up for the preventive maintenance program, you are then scheduled for service at your convenience, *but both services must be completed within a year of purchase*. On the next page you will see the

involved." (Doc. 85-5 at 4).

---

[6] Carey's was about an hour drive from Plaintiff's house. *See* (Doc. 85-5 at 3). Thus, each service visit required a serviceman to drive two hours in addition to the actual servicing time.

breakdown of all the work that is completed during these maintenance calls. The cost of the yearly maintenance agreement is ***$168.00*** and is paid when you sign up for the program. This will give you several advantages over other customers who ***DO NOT*** have this agreement. As a maintenance agreement customer you will receive priority service if any emergency service calls are needed, and you will receive a major price reduction for services and parts on any future service call repairs.

Preventive maintenance does not guarantee that your unit will not have a break down, but it does help to catch some of the problems before they arise, and a properly serviced system will save you operating cost and help to prolong the life of your system.

Our program covers one (1) heating and one (1) cooling maintenance per system, per year. If you have more than one system, you can add additional systems for ***$98.00*** each.

***\*BOTH MAINTENANCE MUST BE COMPLETED WITHIN TWELVE (12) MONTHS OF CONTRACT DATE!***

(Doc. 1 at 35). On July 1, 2013, a River Valley technician determined that one of Plaintiff's heat-pumps had low refrigerant levels due to a purported leak in the evaporator coil. (Docs. 119-1 at 22). Less than two weeks later, a River Valley technician came to the same conclusion while inspecting Plaintiff's second heat-pump. (*Id.*) According to Plaintiff, River Valley technicians went to his house "no fewer than 9 separate times to repair [his] Goodman Units, either by replacing Freon from a leaking evaporator coil, or repairing and/or replacing any other parts needing service." (Doc. 79 at 3). Finally, in July 2015, River Valley refused to service Plaintiff's heat-pumps because doing so was cost prohibitive. (*Id.*)

Plaintiff alleges that had he "known of the evaporator coil defects in the Goodman Products, he would have never purchased his two Goodman air conditioning units and installed them in his home." (*Id.* at 4).[7] Plaintiff does not claim, beyond the maintenance agreement itself, that he incurred any other labor costs related to repairing the evaporator

---

[7] This allegation flies in the face of Plaintiff's deposition testimony. *See* (Doc. 85-15) (explaining that even with a ten percent chance of a "costly repair," Plaintiff would not purchase an extended warranty and with a twenty percent chance, he would "probably" purchase the air conditioning unit).

coils during the period his heat-pumps were being serviced by River Valley. (Doc. 85-19 at 3).[8]

### B. Parallel Litigation

Parallel litigation is ongoing in several district courts throughout the country, including before Judge David O. Carter in the Central District of California. *See McVicar v. Goodman Global, Inc.*, No. SA CV 13-1223-DOC(RNBx) (C.D. Cal.). *McVicar* involves the same defendants; defensive discovery; theory of alleged defect; alleged misrepresentations and omissions; damages theory; and, with one exception, experts. Judge Carter ultimately denied certifying the proposed class based on consumer fraud statutes, false advertising, breach of implied warranty, and warranty claims under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301. *See McVicar v. Goodman Global, Inc.*, 2015 WL 4945730, at *15 (C.D. Cal. Aug. 20, 2015), *perm. app. denied*, 15-80164 (9th Cir. Nov. 15, 2015). Judge Carter's rulings are not binding on this Court and will be reviewed for their persuasive value only.

### C. Air Conditioners

Judge Carter provided a general description of air conditioners—which are comprised of the same components as heat-pumps—that the Court adopts:

> A residential air conditioner is comprised of three primary components: (1) an evaporator coil; (2) a condenser coil; and (3) a compressor. The three components are connected in a hermetic system with a refrigerant, such as Freon. The two coils are the key components in removing heat from inside the home and exhausting it outside. The coils at issue in this care [sic] are made with small diameter copper tubes (called hairpins) and copper u-bends that are brazed together in a continuous fashion so that refrigerant can pass through the coil to other components of the air conditioner.

*McVicar*, 2015 WL 4945730, at *3. This lawsuit concerns the same copper coils that

---

[8] Plaintiff does claim that he "incurred additional costs both in the purchase of a service warranty and costs in replacement parts" and cites to his deposition and declaration as support. (Doc. 191-5 at 14). However, the "replacement parts" to which Plaintiff refers concern Plaintiff's purchase of an "LXU valve," an item unrelated to repairing an evaporator coil; the "service warranty" is the maintenance agreement with River Valley. *See* (Docs. 79 at 3; 108-3 at 30).

were at issue before Judge Carter.

**D.    Procedural Background**

Plaintiff, a resident of Arizona, brings this lawsuit on behalf of himself and similarly situated consumers located in Arizona. (Doc. 119-1 at 6). Plaintiff alleges that Goodman knowingly manufactured and sold air-conditioning systems with inherently defective evaporator coils and did not disclose the defect to purchasers. (*Id.* at 6–7). Due to Goodman's knowledge of the alleged defect, Plaintiff claims that it was unconscionable for Goodman's Limited Warranty to exclude labor costs associated with evaluating, replacing, or servicing an evaporator coil. (*Id.* at 20).

Plaintiff filed his original class action complaint on November 20, 2013. (Doc. 1). Plaintiff's original complaint alleged that Goodman breached an express warranty and violated Arizona's Consumer Fraud Act. (*Id.* at 26–27). On January 27, 2014, Goodman moved to dismiss the complaint in its entirety. (Doc. 10) The prior Judge granted Goodman's motion to dismiss, but permitted Plaintiff to amend his complaint as to the express warranty claim. (Docs. 10, 22). On May 20, 2014, Plaintiff timely filed his First Amended Complaint ("FAC") which sets forth only one cause of action: breach of express warranty. (Doc. 24 at 28–29). Goodman timely filed its Answer on June 17, 2014. (Doc. 27).

On July 20, 2015, Plaintiff filed a Motion to Certify Class and requested that the entire motion and several of its exhibits be filed under seal. (Docs. 53, 54). On August 24, 2015, the prior Judge permitted Plaintiff to file the entire motion and a majority of the supporting documents under seal. (Doc. 65). Upon being reassigned this case, this Court ordered Plaintiff to file a redacted, unsealed motion for class certification, which Plaintiff submitted on November 9, 2015. (Docs. 76, 78). In response, Goodman filed its opposition to class certification and a motion to exclude the declaration of Paul J. Sikorsky, Plaintiff's expert. (Docs. 84, 85). On December 17, 2015, Plaintiff filed a supplemental declaration of Mr. Sikorsky providing further support for class certification, which Goodman moved to strike as untimely. (Docs. 92, 96).

## II.    Class Certification

Plaintiff seeks class certification of one class ("Class"):

> All individuals and entities in the State of Arizona who purchased air conditioners, air handlers and heat-pumps manufactured by Goodman within the applicable statute of limitations periods established by the state of Arizona ("Class Period") through the final disposition of this and any and all related actions, and who incurred damages as a result of having to repair their Goodman Products due to leakage of refrigerant.

(Doc. 78 at 2). Plaintiff "requests certification of the above-defined Class for violations of (i) breach of express warranty under Ariz. Rev. Stat. § 47-2313; (ii) breach of any implied warranty of fitness for intended and ordinary purpose; and (iii) unjust enrichment." (*Id.* at 3–4).

Plaintiff seeks class certification for three causes of action yet only one of his claims—beach of express warranty—was pleaded in his FAC. *See* (Doc. 24 at 28–29). Without citing any authority, Plaintiff argues that "[a]s a procedural device, Rule 23 is not rigidly tied to only those claims expressly plead [sic]; the complaint can be amended and Defendants may then file a motion to dismiss if Defendants so choose." (Doc. 119-5 at 18). The operative complaint has yet to be amended to include Plaintiff's two additional claims, and a motion for class certification is an improper platform for Plaintiff to advance new claims that he did not plead in his FAC. *See Anderson v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 525, 529 (5th Cir. 2008) ("[T]he district court abused its discretion by certifying a class based on claims not pleaded in the complaint."); *Guadiana v. State Farm Fire & Cas. Co.*, 2009 WL 6325542, at *8 (D. Ariz. Dec. 18, 2009) (holding that a "theory of the case . . . not raised in [a plaintiff]'s amended complaint . . . . cannot form the basis for class certification"); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prods. Liab. Litig.*, 288 F.R.D. 445, 448 n.4 (C.D. Cal. Jan. 9 2013) ("A motion for class certification is not the appropriate mechanism to introduce new claims." (citing *Couglin v. Sears Holding Corp.*, 2010 WL 4403089, at *2 (C.D. Cal. Oct. 26, 2010))). Absent more compelling authority, the Court is unconvinced that it should certify a class on three causes of action—two that have never been

pleaded—only to potentially dismiss two non-pleaded claims at a later time. Consequently, the Court will not consider whether the Class should be certified for the two causes of action that Plaintiff did not plead in his FAC.[9]

Plaintiff further implies that the Court should consider a non-pleaded alleged defect in Goodman's condenser coils as a basis for class certification. *See* (Doc. 119-1 at 7) ("Goodman knew its air conditioners contained uniformly defective copper evaporator and condenser coils (hereinafter collectively "coils")."). Plaintiff's FAC, however, only alleges a defect in Goodman's evaporator coils, not in its condenser coils. *See* (Doc. 24 at 28). Evaporator coils and condenser coils perform different functions and are therefore subject to different failure rates. *See* (Doc. 119-2 at 4–13). Consequently, it would be improper to broaden the scope of this litigation at this stage, where no defect as to Goodman's condenser coils has ever been adequately alleged.[10]

Finally, Plaintiff seeks class certification for purchasers of "air conditioners, air handlers, and heat-pumps." (Doc. 78 at 2). Although Plaintiff states in his pleadings and

---

[9] Even if the Court were to consider these two claims, certification would be denied on substantive grounds. First, the breach of implied warranty claim would suffer from the same issues as the breach of express warranty claim. Second, because interpretation of Goodman's Limited Warranty controls this matter, unjust enrichment is not an applicable legal theory. *See Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976) (en banc) ("[W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application."); *U.S. Life Title Co. of Ariz. v. Gutkin*, 732 P.2d 579, 584 (Ariz. Ct. App. 1986) ("[O]ur courts have repeatedly held that the existence of a contract specifically governing the rights and obligations of each party precludes recovery for unjust enrichment.").

[10] Plaintiff contends—again without citing any legal authority—that "[n]othing requires that Plaintiff limit the scope of the class to only a single version of the copper coils given that Plaintiffs have alleged that each version is subject to the same common defect." (Doc. 119-5 at 12). As observed above, Plaintiff's FAC does *not* allege that both the evaporator and condenser coils were defective; it only claims that the evaporator coils had an inherent defect. *See* (Doc. 24 at 28).

Furthermore, the alleged warranty claim rates concern only evaporator coils, not condenser coils. *See* (Doc. 119-2 at 6). The Court would therefore have no way of determining whether the Rule 23 requirements for condenser coils have been satisfied.

declaration that he purchased two "air-conditioners," Plaintiff confirmed during his deposition that the original bill of sale from Carey's stated that he purchased two "heat-pumps." (Doc. 85-5 at 5). According to the declaration of Plaintiff's expert, "[h]eat pumps used for household purposes have the same major components as central air conditioners *except that they also contain a reversing valve that reverses the flow of refrigerant*." (Doc. 119-2 at 5) (emphasis added). Thus, there are physical differences between the air-conditioning systems—differences which are further evidenced by the substantial difference between the warranty claim rates for air conditioners, air handlers, and heat-pumps.[11] Accordingly, the Court will only consider whether Plaintiff can be certified to represent a class of purchasers who purchased the same device that he purchased: a heat-pump.

For these reasons, the Court's inquiry is limited to whether the Class should be certified as to the breach of express warranty claim arising from an alleged defect in Goodman's evaporator coils in its heat-pump product.

### A.    Legal Standard

Federal Rule of Civil Procedure ("Rule") 23 gives the Court broad discretion to determine whether a class should be certified. The Court should nevertheless certify a class only after a "rigorous analysis" of the Rule 23 mandates. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982). The party seeking class certification bears the burden of showing that each of Rule 23(a)'s requirements and at least one of Rule 23(b)'s requirements has been met. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

When adjudicating a motion for class certification, the Court accepts the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an "informed judgment" as to whether the requirements of Rule 23 have been satisfied. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). The merits of the class

---

[11] In fact, the warranty claim rate for "air conditioners" would not even meet the threshold percentage considered by Plaintiff's expert's to be defective.

members' substantive claims are generally irrelevant to this inquiry. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983). However, the Court "*must* consider the merits if they overlap with Rule 23[]'s requirements." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011)).

Rule 23 has two implicit prerequisites that Plaintiff must satisfy for the Court to grant certification. *See McDonald v. Corr. Corp. of Am.*, 2010 WL 4572758, at *2 (D. Ariz. Nov. 4, 2010); *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999). First, in order to maintain a class action, the class must be "adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970); *see Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 730 (9th Cir. 2007) ("The district court's failure to analyze the Rule 23(a) factors in determining whether to grant class certification . . . resulted in its certifying a theory with no definable class."). The class cannot be "overbroad, amorphous, or vague," and must be susceptible to a precise definition. *McDonald*, 2010 WL 4572758, at *2; *see O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) ("A class definition should be precise, objective, and presently ascertainable." (quotations omitted)). In other words, "[t]he class must be precisely defined" so the Court can determine whom "will be bound by the judgment." *McHan v. Grandbouche*, 99 F.R.D. 260, 265 (D. Kan. 1983) (citation omitted).

Second, the named representative must be a "member of the class." *See Bailey v. Patterson*, 369 U.S. 31, 32–33 (1962). The Ninth Circuit dovetails the class membership prerequisite with the typicality requirement of Rule 23(a). *See Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1184 (9th Cir. 2007), *aff'd en banc*, 603 F.3d 571 (9th Cir. 2010), *rev'd on other grounds*, 131 S. Ct. 2541 (2011) ("Typicality requires that the named plaintiffs be members of the class they represent." (citing *Falcon*, 457 U.S. at 156)).

If the two prerequisites are met, Plaintiff must then prove that the Class meets the following four requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law and fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Finally, if Plaintiff satisfies all of Rule 23(a)'s elements, he must also prove that at least one of the following Rule 23(b) requirements is met:

> (1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b).

## B.    Class Certification Prerequisites

The Court first addresses the two prerequisites to class certification.

### 1.    Class Definition

Before establishing numerosity, commonality, typicality, and adequacy, the party seeking class certification must demonstrate that the class is "adequately defined and clearly ascertainable" without being "overbroad, amorphous or vague." *McDonald*, 2010 WL 4572758, at *2; *see Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) ("[T]he party seeking class certification must demonstrate that an identifiable and ascertainable class exists." (citation omitted)); *In re Tetracycline Cases*, 107 F.R.D. 719, 728 (W.D. Mo. 1985) (explaining that it must be "administratively feasible to determine

whether a given individual is a member of the class").

After extensive review, the Court finds that the class definition sweeps purchasers without claims into the Class thereby rendering the definition unduly broad. Particularly, the Class as presently defined only requires that each class member be one "who incurred damages as a result of having to repair their Goodman Products due to leakage of refrigerant." (Doc. 78 at 2). Plaintiff's theory, however, is that "his Goodman Products contained *defective evaporator coils* that *caused* refrigerant to leak from his Goodman Products." (Doc. 24 at 28) (emphasis added). Even more specifically, the heart of Plaintiff's argument is that *formicary corrosion* in Goodman's evaporator coils *caused* the products to leak refrigerant. *See, e.g.*, (Doc. 119-1 at 26). It is undisputed that just because a purchaser incurred damages "due to leakage of refrigerant" does not mean that an *evaporator coil*—much less an evaporator coil that failed *due to formicary corrosion*—"caused" the leak. In fact, as Plaintiff's expert concedes, many other components of an air-conditioning system can cause refrigerant leakage, such as the condenser coils, compressor, or tubing that connects the components. *See* (Doc. 119-2 at 5). Plaintiff's expert further testified that an evaporator coil can leak for numerous other reasons unrelated to formicary corrosion, namely, "installation problems," "service issues," "other kinds of corrosion," "handling at the job site," "Chinese drywall, sulfur attacks," "improper operation," and "microbial growth." *See* (Doc. 85-7 at 29).

Plaintiff provides no evidence showing either that (1) *only* evaporator coils with formicary corrosion can cause refrigerant leaks or (2) the class could be limited to purchasers of heat-pumps whose evaporator coils failed due to formicary corrosion.[12] Without such evidence, the proposed class is overbroad. *See Mueller v. CBS Inc.*, 200

---

[12] Plaintiff argues that class members can be ascertained by reviewing Goodman's warranty claim database. (Doc. 119-5 at 12–13). Even assuming Plaintiff is correct that "leaking refrigerant" is a category of warranty claim, see (Doc. 119-2 at 7), the definition would not overcome the deficiencies identified above in ascertaining the Class. Moreover, if Plaintiff is incorrect that Goodman's database has this specificity, the Class would also fail because it would not be ascertainable regardless of its breadth.

F.R.D. 227, 233–34 (W.D. Pa. 2001) (declining to certify class where numerous individual determinations were necessary to identify class members).[13]

Plaintiff contends that if the proposed class is somehow inadequate, the Court can modify the definition. (Doc. 119-5 at 13). Even if the Court were to exercise its broad discretionary powers and redefine the Class to include only those purchasers who owned units with evaporator coils that failed due to formicary corrosion,[14] the Court's efforts would be futile because the underlying problems raised by the class definition are echoed in the typicality test of Rule 23(a)(3) and the predominance analysis of Rule 23(b).

### 2.    Class Membership

Although the Court should not consider the merits of Plaintiff's claim at the class

---

[13] Judge Carter came to a similar conclusion. *See McVicar*, 2015 WL 4945730, at *9 n.7 (finding that the proposed class was "unduly broad" because it included both evaporator and condenser coils in the definition and the plaintiff only alleged a defect in the evaporator coils). Here, the class definition does not even require a member's heat-pump to fail due to a defective coil, much less a defective evaporator coil.

[14] During oral argument, Plaintiff fleetingly suggested that limiting the class to only those purchasers who owned units with evaporator coils that failed due to formicary corrosion would be prohibited as a "fail-safe" class. Though never discussed in Plaintiff's papers, the Court does not agree that the fail-safe class doctrine leads to a different result. A fail-safe class "include[s] *only* those who are *entitled* to relief," *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012), and cannot be defined until "the liability of the defendant is established," *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010). The rationale behind prohibiting a fail-safe class is that "it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those 'class members win or, by virtue of losing, they are not in the class' and are not bound." *Young*, 693 F.3d at 538.

In this case, the fact that a purchaser's evaporator coil had formicary corrosion would not, by itself, "entitle" the purchaser to relief or establish the liability of Goodman. Rather, the purchaser would still bear the burden of proving his breach of express warranty claim—namely, that Goodman's Limited Warranty was unconscionable. Whether a purchaser's evaporator coil had formicary corrosion is not a question to determine liability but a standing inquiry to ensure that the purchaser has standing to seek the requested relief. *See Ellis*, 657 F.3d at 988 (noting that "a district court must consider how best to define the class[] to ensure that all class members have standing to seek the requested relief").

certification stage, it must consider whether Plaintiff does, in fact, have standing to claim the damages he alleges. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("The issues of predominance, superiority, typicality, and other challenges to [a named plaintiff's] class representation need not be considered if she is not in the subject class."). If a plaintiff lacks standing or has no claim "she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail." *Lierboe*, 350 F.3d at 1022; *see Pence v. Andrus*, 586 F.2d 733, 736–37 (9th Cir. 1978) ("[I]n class actions, the named representatives must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (citations omitted)).

According to Plaintiff, class members were allegedly injured because Goodman's Limited Warranty unconscionably excluded labor, diagnostic, and refrigerant costs associated with repairing defective evaporator coils. (Doc. 24 at 11–13, 26). As to "labor costs," Plaintiff seeks to recover the cost of the bi-annual maintenance agreement he purchased from River Valley after his extended warranty with Carey's ended. (Doc. 85-19 at 3). As observed from the terms of the maintenance agreement itself, however, the cost of the agreement is not analogous to labor repair costs. Purchasers of Goodman air-conditioning systems are obligated under the express terms of the Limited Warranty to shoulder the costs of servicing the system. *See* (Doc. 56-1 at 3). Here, Plaintiff hired River Valley to service his heat-pumps twice per year and presents no evidence that River Valley charged him additional labor costs for repairing the evaporator coils. Thus, even if the Court certified the class and the class was to prevail such that each member was awarded his labor costs, Plaintiff's purported damages would not be redressed.[15]

---

[15] According to his FAC, "Plaintiff suffered damages in that Plaintiff incurred costs to diagnose the problem, labor costs to repair the defective Goodman units, and costs to replace the refrigerant." (Doc. 24 at 28). As explained above, although Plaintiff claims that he "incurred additional costs both in the purchase of a service warranty and costs in replacement parts," (Doc. 191-5 at 14), the "service warranty" is the maintenance

Therefore, Plaintiff lacks standing to assert the damages he alleges and is not a member of the Class. *See Lujon v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (holding that standing requires that "the injury will be redressed by a favorable decision" (quotation omitted)).[16]

Furthermore, if the Court were to redefine the Class to include only those purchasers who incurred damages as a result of refrigerant leakage due to formicary corrosion in an evaporator coil, Plaintiff would not be a member of the class as he cannot show that his heat-pumps leaked refrigerant due to formicary corrosion. In fact, Plaintiff's counsel stated during oral argument that Plaintiff has no "direct evidence" that his coils failed due to formicary corrosion.[17] Thus, under a modified class definition, Plaintiff would not be a member of the class.

### 3.    Conclusion

Plaintiff has not satisfied either pre-requisite for class certification. Nevertheless, the Court will review Rule 23(a) and (b) to show that even if the Court attempted to redefine the Class, class certification would still be inappropriate.

---

agreement with River Valley and the "replacement parts" refers to Plaintiff's purchase of an LXU valve which is wholly unrelated to the evaporator coil, see (Docs. 79 at 3; 108-3 at 30). Moreover, in response to an interrogatory, Plaintiff stated that the only out of pocket expense he sought to recover was the cost of the maintenance agreement. *See* (Doc. 85-19 at 3). Thus, Plaintiff did not incur diagnostic or refrigerant costs relating to an evaporator coil and the only arguable "labor cost" is the maintenance agreement.

[16] During oral argument, Plaintiff made the bewildering argument that Plaintiff's counsel (and evidently the Court) could simply substitute another purchaser as class representative in Mr. Gustafson's stead. Such an argument only serves to indicate that this class action is likely being driven not by Plaintiff but by his counsel.

[17] Plaintiff's counsel suggested that whether a particular class member's coil leaked refrigerant due to formicary corrosion was an issue for the factfinder to determine through circumstantial evidence. Specifically, the jury would estimate which purchasers' units leaked refrigerant due to formicary corrosion on a "pro-rata" basis. Such a strategy is clearly contrary to the law, as standing requires that the recovery sought must redress the injury suffered. *See Lujan*, 504 U.S. at 560–61. Under Plaintiff's "pro-rata" theory, purchasers whose evaporator coils never even developed formicary corrosion would be compensated.

1

**C.     Rule 23(a) Requirements[18]**

2

**1.     Commonality**

3   The "commonality" requirement mandates that there be "questions of law or fact

4   common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires that class members

5   share a common claim that is "capable of class-wide resolution," meaning that

6   determination of the claims' "truth or falsity will resolve an issue that is central to [the

7   claims'] validity." *Dukes*, 131 S. Ct. at 2551. Commonality exists where class members'

8   "situations share a common issue of law or fact, and are sufficiently parallel to insure a

9   vigorous and full presentation of all claims for relief." *Wolin v. Jaguar Land Rover N.*

10   *Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Cal. Rural Legal Assistance,*

11   *Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990)). "The existence of shared

12   legal issues with divergent factual predicates is sufficient, as is a common core of salient

13   facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*,

14   150 F.3d 1011, 1019 (9th Cir. 1998).

15   The requirements of Rule 23(a)(2) are "construed permissively," and just one

16   common question of law or fact will satisfy the rule. *Ellis*, 657 F.3d at 981. Notably,

17   "[t]he commonality preconditions of Rule 23(a)(2) are less rigorous than the companion

18   [predominance] requirements of Rule 23(b)(3)." *Hanlon*, 150 F.3d at 1019.

19   Here, Plaintiff proffers the following common questions that will be resolved by

20   this action, namely, whether:

21   (1) Goodman's air conditioners have a propensity to leak refrigerant and
22   prematurely fail;

23   (2) Goodman knew that the air conditioners have a propensity to leak
     refrigerant due to formicary corrosion and prematurely fail;

24   (3) Goodman's omissions of the material fact that the air conditioners have

25

_____

26   [18] Rule 23(a) first requires that the proposed class be "so numerous that joinder of
27   all members is impractical." Fed. R. Civ. P. 23(a)(1). Goodman does not appear to
     dispute that the numerosity requirement has been satisfied. However, because the Court
28   finds that the class definition itself is defective, determining numerosity based on an
     improper definition would artificially elevate the proposed class numbers.

a propensity to leak refrigerant due to formicary corrosion was likely to deceive a reasonable consumer;

(4) Goodman's air conditioners were sold as warranted, "free from defects in materials and workmanship that affect performance under normal use and maintenance";

(5) The failure of Goodman's air conditioners arises from the same event or course of conduct such that a breach of warranty claim can be sustained;

(6) Plaintiff and the Class are entitled to equitable relief, including restitution; and

(7) As a result of Goodman's conduct, Plaintiffs have suffered damages and, if so, the proper amount thereof.

(Doc. 119-1 at 24–25). In support of his motion, Plaintiff presents the declaration of Mr. Sikorsky, a thirty-year veteran of the heating, ventilation, and air conditioning ("HVAC") industry, where he worked primarily for one of Goodman's competitors, Trane Company. (Doc. 119-1 at 2). The declaration of Mr. Sikorsky provided here is nearly identical to that which was presented to Judge Carter. *Compare* (*id.*) *with McVicar*, 2015 WL 4945730, at *6–7. Judge Carter summarized the salient portions of Mr. Sikorsky's declaration as follows:

> . . . . In his declaration, Mr. Sikorsky provides an overview of the general function of an air conditioning system. He notes that evaporator and condenser coils should not typically fail during their ordinary use, because of the absence of moving parts. A coil that leaks refrigerant is defective, and will cause the air conditioner to fail.
>
> After reviewing Goodman documents regarding copper evaporator coils manufactured by Goodman from 2006 to 2014, Mr. Sikorsky concludes that the relatively high warranty claims rate is evidence of a defect in the design or manufacture of the product. In his experience, warranty claims rates exceeding 1% are excessive. Mr. Sikorsky concludes that, due to the significant average time from installation to failure, most of the failures identified in the warranty claim information occurred as a result of a slowly progressing, degenerative process like formicary corrosion. Formicary, or ant-hill-like, corrosion is a corrosion process that occurs in copper, which forms tunnels or perforations in copper that wind and intersect, evocative of its namesake—the ant-hill. Formicary corrosion has been identified in the industry as a potential failure for copper coils in air conditioning systems for many years, and could be caused by either the operating environment (e.g., chemicals used in the home) or from the

- 17 -

internal processes used by the HVAC manufacturer (e.g., chemicals used in the manufacture of coils, including some lubricants). . . .

Goodman implemented a number of attempts to fix the problems that presented with formicary corrosion, including applying polymer coating and increasing the wall thickness of the coils, but neither fixed the underlying problem. Eventually, Goodman switched to using all-aluminum evaporator coils. Plaintiffs also present significant documentary evidence of company knowledge of coil failures in several states, including Texas, Tennessee, and Louisiana.

*McVicar*, 2015 WL 4945730, at *6–7 (internal citations omitted).

In response, Goodman argues that the individual inquiries necessary to determine why an individual coil failed makes the common questions prong unmet. (Doc. 85 at 31). Irrespective of this argument, there are still several other questions that are "common." For example, whether Goodman knew of the propensity of a coil to leak is a common question, as is whether the heat-pumps were sold as warranted. Goodman's argument that individual inquiry does not allow common questions to be determined in "one stroke" concerns the predominance of individual issues over common ones rather than whether the question is in fact "common."

Accordingly, under the permissive standard of Rule 23(a), Plaintiff has satisfied the commonality requirement.

### 2.    Typicality and Adequacy

A class representative's claims or defenses must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted). "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Id.* "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

- 18 -

In addition, a class representative must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining adequacy, courts evaluate two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (citation omitted).

As explained above, Plaintiff has not met his burden of showing that he suffered the "same or similar injury" as other class members. Namely, Plaintiff contends that Goodman's Limited Warranty exclusion of labor, diagnostic, and refrigerant costs is unconscionable. (Doc. 24 at 11–13, 26). Plaintiff, however, never incurred any labor, diagnostic, or refrigerant costs to repair a heat-pump that leaked refrigerant. Furthermore, even if Plaintiff's bi-annual maintenance agreement was considered a labor cost, Goodman has numerous "unique defenses" to Plaintiff's claim that likely would become the focus of the litigation. *See Hanon*, 976 F.2d at 508.[19] Thus, Plaintiff is not "typical" of members of the proposed class.[20]

Accordingly, regardless of whether Plaintiff is adequate, the Court finds that Plaintiff would not be typical of members of the proposed class.

### D.    Class Certification under Rule 23(b)

If a plaintiff satisfies the requirements of Rule 23(a), the class must also satisfy at

---

[19] Specifically, Goodman will presumably argue that construction near Plaintiff's heat-pumps caused any issues with the evaporator coil due to debris in the systems. *See* (Doc. 120-2 at 28–29). Goodman will also defend by arguing that (1) improper brazing caused the refrigerant leakage, (2) no testing showed Plaintiff's coils failed due to formicary corrosion, and (3) Plaintiff's own statements concerning the unconscionability of the labor warranty show that Plaintiff does not believe the Limited Warranty is unconscionable. (*Id.*) These are all defenses unique to Plaintiff.

[20] Further troubling the Court is the fact that Plaintiff failed to allege at least one claim that other class members may want to assert. Namely, whether Goodman breached any implied warranties is a theory of liability under which members may wish to seek recovery. If the Court were to certify the proposed class, however, putative class members would be precluded from doing so unless they opted out of the class.

least one of the three requirements listed in Rule 23(b). Plaintiff invokes Rule 23(b)(3), under which common questions of law or fact must predominate and the class device must offer a superior means of resolving the dispute. Plaintiff also invokes Rule 23(b)(2), under which class treatment is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Court will review each provision in turn.

### 1.      Rule 23(b)(3)

An action may be certified pursuant to Rule 23(b)(3) if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) asks whether these common questions predominate." *Wolin*, 617 F.3d at 1172. Though there is substantial overlap between the two tests, the 23(b)(3) test is "far more demanding" and asks "whether [the] proposed class[ is] sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997).

The heart of Plaintiff's theory is that Goodman knew of a design defect in its evaporator coils (*i.e.*, that the coils were "susceptible to" formicary corrosion), warranted that its products met or exceeded a certain standard of quality, and did not disclose the defect to consumers. *See* (Doc. 119-5 at 6–7). To that end, Plaintiff seeks to certify as a class all purchasers who incurred labor costs "due to leakage of refrigerant." (Doc. 78 at 2). As explained above, the Court finds that the class definition is unduly broad and, even if narrowed[21] or expanded[22] by redefinition, would still fail certification under Rule

---

[21] To evade being overbroad, the class would be limited to only those purchasers of heat-pumps who were damaged due to formicary corrosion of an evaporator coil.

[22] If the Court were to expand the class definition to include all purchasers of Goodman heat-pumps, such a definition would continue being unduly broad under

23(b)(3). Namely, although common questions exist, determining whether each class member was in fact injured due to formicary corrosion of an evaporator coil (the alleged defect) would require arduous individual inquiry that would swallow any common issues. *See Mueller*, 200 F.R.D. at 233–34 (declining to certify class where numerous individual determinations were necessary to identify class members). Notably, in order to compensate only those purchasers who were actually harmed by the alleged defect, this inquiry is required *regardless* of whether the class definition is limited to only purchasers whose evaporator coils developed formicary corrosion.

Plaintiff argued during oral argument that the factfinder could estimate which class members were injured on a "pro-rata" basis using "circumstantial evidence," *i.e.*, statistics based on warranty claim rates. After determining this "pro-rata" percentage of class members, the factfinder ostensibly would then select and award labor costs to the lucky members who were deemed part of the "pro-rata" formicary corrosion group— without any actual finding that formicary corrosion was the cause of those members' coil issues. Clearly, there are serious problems with such a proposal.

At the class certification stage, Plaintiff must offer a damages theory that can measure, on a class-wide basis, damages *attributable* to Plaintiff's theory of liability. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2012) (requiring a plaintiff to offer a damages model that measures on a class-wide basis "only those damages attributable to [his] theory [of liability]"). While cognizant of the fact that "[t]he amount of damages is invariably an individual question and does not defeat class action treatment," *Blackie*, 524 F.2d at 905, the individual issues arising from calculating damages in this case would only exacerbate the already predominating individual causation issues. Particularly, the failure of each evaporator coil and the accompanying labor costs would require proof not

Plaintiff's proposed damages theory because nearly all of the class would never have experienced a product failure. *See McVicar*, 2015 WL 4945730, at *15 (explaining that the proposed class of "all owners" of Goodman's products did not correlate with Plaintiff's damages theory because the theory "does not touch on the economic impact of any alleged misrepresentations leading to purchases of air conditioners containing the defective product where the product does not fail").

only that the failure was caused by the alleged defect but also that the labor costs actually occurred. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (noting that a plaintiff's model must measure only those "damages stemm[ing] from the defendant's action that created the legal liability").[23] Thus, "to determine causation and damages for [the breach of warranty claim], it is inescapable that many triable individualized issues may be presented," *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001), such as whether (1) a particular purchaser's evaporator coil leaked refrigerant, (2) the leak was caused by formicary corrosion, (3) a design defect caused the formicary corrosion, (4) the member incurred the alleged damages, and (5) Goodmans' Limited Warranty was unconscionable as to that particular purchaser.

Plaintiff cites *Wolin* to support his argument that Rule 23(b)(3) is satisfied. *See* (Doc. 119-1 at 30–33). In *Wolin*, the Ninth Circuit certified a class asserting a breach of warranty claim that was comprised of "all purchasers" of an automobile because the claim "require[d] common proof of the existence of the defect." 617 F.3d at 1171, 1173. The court also denied certifying the class's claim demanding damages for product failures because determining whether the alleged defect "*caused*" a particular product to fail required individual proofs that predominated over common questions. *Id.* at 1174.

The Court finds that the latter holding in *Wolin* is more analogous to the liability theory proffered by Plaintiff here. Plaintiff's theory identifies specific purchasers of Goodman heat-pumps: purchasers who incurred labor costs *caused* by refrigerant leakage *caused* by formicary corrosion in evaporator coils *caused* by a design defect. Plaintiff does not assert that the *mere use* of copper in Goodman's evaporator coils was a design

---

[23] Even if a particular warranty claim concerned an evaporator coil that failed due to formicary corrosion, the purchaser may not have incurred any labor, diagnostic, or refrigerant expenses. For example, such a purchaser could have been covered by a Goodman extended warranty (as Plaintiff was for three years) or a third party warranty (as Plaintiff was for several years thereafter). Moreover, the purchaser may not have submitted a warranty claim in the first place, and thus, using Plaintiff's proposed method of identifying class members through Goodman's warranty database, would not even be identified as a class member.

defect, and his expert testified that "the choice of copper by itself [is] not a design defect." (Doc. 120-5 at 22). Had Plaintiff done so, the Class—like the certified class in *Wolin*—would have included *all* purchasers of Goodman heat-pumps because the use of copper impacts all purchasers. Instead, Plaintiff argues that the mere susceptibility of the copper coils to formicary corrosion is the defect and—like the non-certified class in *Wolin*—seeks to certify a class of purchasers where the alleged defect has *already* manifested.[24] Consequently, the Court finds that determining "[w]hether each proposed class member's [evaporator coil failed], and whether they [failed] prematurely and as a result of the alleged [formicary corrosion] defect, are individual causation and injury issues that could make classwide adjudication inappropriate." *Wolin*, 617 F.3d at 1174.

For these reasons, the Court concludes that Plaintiff has not satisfied the predominance requirement of Rule 23(b)(3).[25]

### 2.      Rule 23(b)(2)

Under Rule 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ. P. 23(b)(2). "Class certification under Rule 23(b)(2) is

---

[24] Plaintiff cites *In re Zurn Pex Plumbing Products Liab. Litig.*, 267 F.R.D. 549 (D. Minn. 2010) to argue that "why a particular coil failed is irrelevant." (Doc. 119-5 at 18). The certified class in *Zurn Pex* was defined as: "*All* persons and entities that own a structure located within the State of Minnesota that contains a Zurn Pex plumbing system with Zurn brass crimp fittings." *Id.* at 558 (emphasis added). Thus, like the certified class in *Wolin*, the *Zurn Pex* court certified a class that alleged a design defect that equally impacted "all" purchasers. This is not what Plaintiff proposes here. Rather, a class definition that aligns with Plaintiff's liability theory would require an extensive causation inquiry just to determine which purchasers would be in the class. Thus, *Zurn Pex* is inapplicable.

[25] The second prong of the analysis under Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Having determined that Plaintiff failed to establish the predominance prong of Rule 23(b)(3), the Court does not address the superiority prong.

appropriate only where the primary relief sought is declaratory or injunctive." *Ellis*, 657 F.3d at 986; *see Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003) ("[I]n order to permit certification under this rule, the claim for monetary damages must be secondary to the primary claim for injunctive or declaratory relief."). Individualized monetary claims belong under Rule 23(b)(3), "with its procedural protections of predominance, superiority, mandatory notice, and the right to opt out." *Dukes*, 131 S. Ct. at 2545.

Plaintiff seeks certification under Rule 23(b)(2) for declaratory and injunctive relief. Specifically, Plaintiff requests prospective class relief so "that Class Members who experience future failures shall be reimbursed for the cost to replace and repair the defective coil(s)." (Doc. 119-1 at 33). This request, as Judge Carter observed, "seems to be disguising a true request for future monetary payouts in the event of future product failures. Although the injunctive relief would ostensibly declare the product 'defective,' only those who eventually experience product failures as a result of the alleged defect would be entitled to any concrete recovery." *McVicar*, 2015 WL 4945730, at *15. Certification under Rule 23(b)(2) is not permitted for such a purpose. *See Dukes*, 131 S. Ct. at 2557 ("[Rule 23(b)(2)] does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.").

### E.    Conclusion

In summary, Plaintiff's motion for class certification is denied for five reasons: (1) the class definition is overbroad, (2) Plaintiff is not a member of the proposed class, (3) Plaintiff is not typical of members of the proposed class, (4) individual inquiries regarding causation and damages predominate over common questions, and (5) injunctive relief is inappropriate.

## III.   Motion to Exclude and Motion to Strike

Goodman's motions to exclude and strike portions of Mr. Sikorsky's declaration and supplemental declaration will be denied as moot because even if the Court were to consider Mr. Sikorsky's declarations in full, the outcome of this case would not change.

1
IV.     **Conclusion**

2
For the reasons set forth above,

3
**IT IS ORDERED** that Plaintiff's Motion to Certify Class (Docs. 54, 78) is

4
**DENIED**.

5
**IT IS FURTHER ORDERED** that Goodman's Motion to Exclude Certain

6
Opinions of Paul J. Sikorsky and Memorandum in Support (Docs. 84, 115) is **DENIED**

7
as moot.

8
**IT IS FINALLY ORDERED** that Goodman's Motion to Strike Supplemental

9
Declaration of Paul J. Sikorsky in further Support of Plaintiff's Motion for Class

10
Certification (Doc. 96) is **DENIED** as moot.

11
Dated this 14th day of March, 2016.

12

13

14

15
James A. Teilborg
Senior United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28